**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY HOFFSTEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL | ) | |
| COMMUTER RAILROAD CORPORATION | ) | JURY TRIAL DEMANDED |
| D/B/A METRA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiff Timothy Hoffstead ("Hoffstead"), by and through his attorneys, Jacobs, Burns, Orlove & Hernandez LLP, and for their complaint against Defendant Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Metra"), states as follows:

1.  This is an action for damages and equitable relief to redress violations of rights secured to Hoffstead by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA").

2.  Jurisdiction is based on 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 42 U.S.C. § 2000e-5(f).

3.  Venue is proper under 28 U.S.C. §1391(b) because Metra's principal place of business is in Chicago, Illinois, and because the events giving rise to Hoffstead's claims occurred in this judicial district.

4.  Metra is a unit of local government, body politic, political subdivision and municipal corporation of the State of Illinois, created by the Regional Transportation Authority

Act., 70 ILCS 3615/1.01, *et. seq*., with its principal place of business in Chicago, Illinois. Metra is an "employer" within the meaning of 42 U.S.C. § 12111(5).

5.      Hoffstead is an individual residing in this judicial district. From approximately November 15, 2010, through February 27, 2019, Metra employed Hoffstead as a police officer. At all relevant times, Hoffstead has been an "employee" within the meaning of 42 U.S.C. § 12111(4).

6.      In approximately early 2014, Hoffstead became certified as an explosive detection dog handler and began working in this position for Metra.

7.      Hoffstead trained for about three months before becoming certified by the Transportation Security Administration ("TSA") as an explosive detection dog handler.

8.      As an explosive detection dog handler, Hoffstead received higher wages than a regular police officer.

9.      As an explosive detection dog handler, Hoffstead received a dog, named JD.

10.      As part of his duties as an explosive detection dog handler, Hoffstead brought JD home with him and took care of JD outside of work hours.

11.      Hoffstead worked with JD for over four years. During these four years, Hoffstead, his wife, and his children all became emotionally attached to JD.

12.      Hoffstead also served as a field training officer and was paid higher wages than a regular police officer for doing so.

13.      Hoffstead worked a 2 pm to 10 pm shift, and did not have to report to a base station.

14.      As an explosive detection dog handler, Hoffstead received use of a Metra police car he could drive to and from work.

15.     Since approximately 2001, Hoffstead has been diagnosed with migraines.

16.     Hoffstead's migraines substantially interfere with his major life functions of concentrating, thinking, sleeping, and walking.

17.     Hoffstead notified Metra that he suffers from migraines.

18.     Metra was aware that Hoffstead suffers from migraines.

19.     Since approximately 2005, Hoffstead has taken Norco medication prescribed by his doctor to treat his migraines.

20.     Hoffstead notified Metra that he was prescribed Norco medication for his migraines.

21.     Metra was aware that Hoffstead was prescribed medication for his migraines.

22.     In 2013, Hoffstead was diagnosed with Attention Deficit Disorder ("ADD").

23.     Hoffstead's ADD substantially interferes with his major life function of concentrating.

24.     Hoffstead notified Metra that he suffers from ADD.

25.     Metra was aware that Hoffstead has ADD.

26.     Since 2013, Hoffstead has taken medications, including Concerta and Adderall, prescribed by his doctor to treat his ADD.

27.     Hoffstead notified Metra that he was prescribed these medications for his ADD.

28.     Metra was aware that Hoffstead was prescribed these medications for his ADD.

29.     At all relevant times, Hoffstead had "disabilities" within the meaning of the ADA.

30.     At all relevant times, Hoffstead was able to perform the essential functions of his job as a police officer, explosive detection dog handler, and field training officer with or without a reasonable accommodation.

31.     Accordingly, Hoffstead is, and at all relevant times was, a "qualified individual with a disability" within the meaning of the ADA.

32.     Metra is, and at all relevant times was, aware of Hoffstead's disabilities and the prescription medications he took for those disabilities.

33.     On or about July 24, 2018, Metra subjected Hoffstead to a random drug test. The test results were positive and indicated the presence of amphetamine, hydrocodone, and hydromorphone.

34.     The presence of amphetamine, hydrocodone, and hydromorphone was due to the lawfully prescribed medications that Hoffstead took for his migraines and ADD.

35.     On or about August 3, 2018, Metra placed Hoffstead on unpaid leave while Metra investigated the alleged violation of Metra's employment rules due to the positive drug test and placed discipline in Hoffstead's personnel file.

36.     On or about August 3, 2018, Metra requested Hoffstead return his dog, JD, to Metra. Metra returned his assigned dog to the TSA.

37.     On or about August 8, 2018, Hoffstead provided the doctor that conducted the drug testing with the prescriptions for his medications he took for ADD and for migraines.

38.     After Hoffstead provided the prescriptions, on or about August 8, 2018, the doctor revised the test results from positive to negative and notified Metra of the revised results.

39.     On or about September 5, 2018, Metra issued a posting for an explosive detection dog handler position.

40.     Hoffstead applied for the explosive detection dog handler position but did not receive it.

41. Metra awarded the explosive detection dog handler position to Michael Long, a less senior police officer who, based on information and belief, was not disabled and was not certified as an explosive detection dog handler at the time.

42. Metra advised Hoffstead that he was cleared to return to work on or about September 17, 2018.

43. Metra did not return Hoffstead to work as a police officer until on or about October 10, 2018.

44. Metra did not return Hoffstead to his explosive detection dog handler or field training officer positions.

45. As a result, Hoffstead received lower pay upon return to work than before he was erroneously placed on leave.

46. Additionally, Metra placed Hoffstead on an unfavorable overnight shift of 10 pm to 6 am shift, and required him to report to a base station in Blue Island.

47. After returning to work, Hoffstead no longer received use of a Metra police car to drive to and from work.

48. Upon returning to work at Metra in October 2018, Hoffstead experienced a hostile work environment that became so intolerable that he had to resign.

49. Because of the discipline he received related to the falsely positive drug test, Hoffstead feared termination for even one on-the-job rule infraction.

50. Additionally, working as a regular police officer as opposed to an explosive detection dog handler, Hoffstead received lower pay and was unable to perform the same job duties as when he worked as an explosive detection dog handler.

51.     Hoffstead resigned from Metra in February 27, 2019, and took a position as a full-time police officer for the Genoa Police Department. He receives lower pay in this position.

52.     Hoffstead and his family experienced emotional distress caused by Metra's actions of placing him on an unpaid medical leave, refusing to reinstate him to his previous positions, refusing to reinstate him to his previous schedule, and, in the process, removing his dog JD.

53.     On October 23, 2018, Hoffstead timely filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC"). A true and correct copy of this charge is attached as Exhibit A.

54.     On March 26, 2020, the EEOC Chicago District Office issued a determination finding the evidence obtained in its investigation established reasonable cause to believe that Metra discriminated against Hoffstead because of his disability by suspending and demoting him in violation of the ADA. A true and correct copy of this determination is attached as Exhibit B.

55.     On May 19, 2021, the Department of Justice, Civil Rights Division issued Hoffstead a Notice of Right to Sue. This Complaint is filed within 90 days of the receipt of that notice. A true and correct copy of the Notice of Right to Sue is attached as Exhibit C.

56.     Metra discriminated against Hoffstead on the basis of his disabilities by:

   a.  placing him on an unpaid medical leave due to a false positive drug test caused by lawfully prescribed medications taken for his disabilities;

   b.  because of the false positive drug test caused by lawfully prescribed medications taken for his disabilities, demoting him from his positions as an explosive detection dog handler and field training officer and refusing to reinstate him to these higher-paying positions on his return from the unpaid medical leave;

    c. because of the false positive drug test caused by lawfully prescribed medications taken for his disabilities, placing him on an unfavorable schedule on his return from unpaid medical leave; and

    d. constructively discharging Hoffstead by creating a hostile work environment upon his return from unpaid leave so pervasive and severe that Hoffstead had to resign.

57. As a result of the unlawful practices described above, Hoffstead has been deprived of equal employment opportunities, deprived of income, and otherwise adversely affected his employment because of his status as a disabled person in violation of Title I of the ADA, 42 U.S.C. § 12112.

58. Hoffstead demands a trial by jury.

WHEREFORE, Hoffstead respectfully requests that a judgment be entered against Metra and the Court order the following relief from Metra:

    a. A permanent injunction enjoining Metra from engaging in any employment practice which discriminates against Hoffstead and other individuals because of their disabilities;

    b. Back pay, including wages, fringe benefits and interest;

    c. Front pay;

    d. Prejudgment interest;

    e. Costs, including but not limited to reasonable expert witness fees, and reasonable attorneys' fees and the interest incurred thereon, pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(k);

    f. Compensatory damages pursuant to 42 U.S.C. § 1981a;

    g. Any and all other damages proven at trial; and

        h.   Any other relief deemed appropriate by the Court.

                        Respectfully submitted,

                        /s/ Elisa Redish
                        One of Plaintiff's Attorneys

Taylor E. Muzzy (tmuzzy@jbosh.com)
Elisa Redish (eredish@jbosh.com)
Jacobs, Burns, Orlove & Hernandez LLP
150 N. Michigan Ave. Ste. 1000
Chicago, IL 60601
(312) 372-1646