IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY HOFFSTEAD, | ) |
| | ) Case No. 21-cv-4335 |
| Plaintiff, | ) |
| | ) Judge Robert M. Dow, Jr. |
| v. | ) |
| | ) |
| NORTHEAST ILLINOIS REGIONAL | ) |
| COMMUTER RAILROAD | ) |
| CORPORATION D/B/A METRA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timothy Hoffstead ("Plaintiff") brings suit against his former employer, Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Defendant"), alleging that Defendant discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"). Defendant moves to dismiss Plaintiff's constructive discharge claim [13]. For the reasons set forth below, Defendant's motion to dismiss [13] is denied. The Court requests that counsel file a joint status report on the progress of discovery and any settlement efforts or request for a referral to the Magistrate Judge for a settlement conference no later than September 2, 2022.

**I.     Background**

The following facts are taken from the complaint [1] and assumed to be true for purposes of Defendant's motion to dismiss. See *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022). Plaintiff began working for Defendant in November 2010 as a police officer. [1 at ¶ 5.] In early 2014, Plaintiff was certified by the Transportation Security Administration as an explosive detection dog handler and started working in this position for Defendant. [*Id.* at ¶¶ 6–7.] As an

explosive detection dog handler, Plaintiff received higher wages than a regular police officer, cared for and became emotionally attached to his assigned dog, worked a 2 p.m. to 10 p.m. shift, and received use of a police car to drive to and from work. [*Id.* at ¶¶ 8–14.] Plaintiff also worked as a field training officer, for which he received higher pay than a regular police officer. [*Id.* at ¶ 12.]

Since 2001, Plaintiff has suffered from diagnosed migraines that interfere with daily life functions. [*Id.* at ¶ 15.] Plaintiff has taken Norco medication prescribed by his doctor to treat his migraines since approximately 2005. [*Id.* at ¶ 19.] In 2013, Plaintiff was also diagnosed with Attention Deficit Disorder ("ADD"), for which he takes medications prescribed by his doctor, including Concerta and Adderall. [*Id.* at ¶¶ 22, 26.] Defendant was aware of Plaintiff's migraine condition, his ADD, and the prescribed medications he took for both conditions. [*Id.* at ¶¶ 17–18, 20–21, 24–25, 27–28.] The complaint alleges that Plaintiff was able to perform the essential functions of his job as a police officer, explosive detection dog handler, and field training officer with or without a reasonable accommodation. [*Id.* at ¶ 30.]

On July 24, 2018, Defendant subjected Plaintiff to a random drug test. [*Id.* at ¶ 33.] Because of Plaintiff's prescribed medications for migraines and ADD, the drug test came back positive and indicated the presence of amphetamine, hydrocodone, and hydromorphone. [*Id.* at ¶¶ 33–34.] On August 3, 2018, Defendant placed Plaintiff on unpaid leave to investigate the alleged violation of employment rules, placed discipline in Plaintiff's file, and requested the return of his assigned dog. [*Id.* at ¶¶ 35–36.] Plaintiff provided the prescriptions for his medications to the doctor who conducted the drug testing, who then revised the drug test results from positive to negative and notified Defendant of the change. [*Id.* at ¶¶ 37–38.]

After Defendant issued a posting for an explosive detection dog handler position in September 2018, Plaintiff applied for the open position and did not receive it. [*Id.* at ¶¶ 39–40.]

2

Instead, Defendant awarded the position to a less senior police officer who was not disabled and was not a certified explosive detection dog handler at the time. [*Id.* at ¶ 41.] Defendant advised Plaintiff that he was cleared to return to work in September, but did not return Plaintiff to work until approximately October 10, 2018. [*Id.* at ¶¶ 42–43.] Because Plaintiff was returned to work as a regular police officer instead of an explosive detection dog handler or a field training officer, Plaintiff received lower pay, had an unfavorable overnight shift, and was no longer allowed use of a police car to drive to and from work. [*Id.* at ¶¶ 43–47.] Plaintiff resigned from his employment with Defendant on February 27, 2019 and took a lower-paid position as a full-time police officer for the Genoa Police Department. [*Id.* at ¶ 51.]

In October 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") complaining about Defendant's treatment. [*Id.* at ¶ 53.] On March 26, 2020, the EEOC Chicago District Office issued a determination finding reasonable cause to believe that Defendant violated the ADA. [*Id.* at ¶ 54.] On May 19, 2021, the Department of Justice, Civil Rights Division issued Plaintiff a Notice of Right to Sue. [*Id.* at ¶ 55.]

Plaintiff filed a complaint [1] in this court on August 13, 2021. Plaintiff alleges that Defendant discriminated against him on the basis of his disabilities by using the false positive drug test caused by lawfully prescribed medications as a basis for placing him on unpaid medical leave; demoting him from his positions as an explosive detection dog handler and field training officer and refusing to reinstate him when he returned from leave; and placing him on an unfavorable schedule when he returned from leave. Plaintiff also alleges that Defendant constructively discharged him by creating a hostile work environment upon his return from unpaid leave so pervasive and severe that Plaintiff had to resign. Currently before the Court is Defendant's motion to dismiss the constructive discharge claim.

II.     **Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating the complaint, the Court must "treat all allegations as true" and "draw all reasonable inferences in the plaintiff's favor." *Zimmerman*, 25 F.4th at 493.

To survive a motion to dismiss, "the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Flores v. City of South Bend*, 997 F.3d 725, 728-29 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Seventh Circuit has interpreted this to require the plaintiff to "'give enough details about the subject-matter of the case to present a story that holds together.'" *West Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). "In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id*. At the end of the day, "the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 892-93 (N.D. Ill. 2016). It is proper for the Court to "consider, in addition to the allegations set forth

4

in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

### III. Analysis

Defendant moves to dismiss Plaintiff's constructive discharge claim. Constructive discharge occurs when a reasonable employee would find working conditions "unbearable" and find no option but to resign. *Wright v. Illinois Dept. of Children & Family Services,* 798 F.3d 513, 527 (7th Cir. 2015); see also *Ziccarelli v. Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022); *E.E.O.C. v. University of Chicago Hospitals,* 276 F.3d 326, 331 (7th Cir. 2002). The Seventh Circuit has outlined two ways in which intolerable conditions may constitute a constructive discharge. First, an employee may resign as a direct result of discriminatory harassment. *Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 679 (7th Cir.2010). In such a case, a plaintiff must "show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress." *Id.* In the second form of constructive discharge, an employer effectively communicates that the employee will be terminated, again compelling the employee to resign. *Id.* Plaintiff alleges the first form of constructive discharge, claiming that the hostile work environment to which he returned after unpaid leave was "so pervasive and severe" that he had no choice but to resign. [1 at ¶ 56.]

Compared to the demanding definition of constructive discharge, requirements for sufficiently pleading discriminatory constructive discharge are considerably more lenient. In *Carlson v. CSX Transportation, Inc.,* 758 F.3d 819 (7th Cir. 2014), the Seventh Circuit found that the district court had held the plaintiff to too high a standard in dismissing her constructive

5

discharge claim for insufficient evidence. *Id.* at 829–30. The court reasoned that although "[t]he conditions Carlson described in her complaint may not ultimately qualify as intolerable," it could not "say so definitively at the pleading stage, which (we stress again) is before any evidence is required." *Id.* at 830. Instead, the plaintiff's complaint was sufficient to survive a motion to dismiss because it "included specific examples of poor treatment," including that her superiors made her training program intolerable by "belittling her, assigning her extra work, and giving her unjustifiably poor evaluations, leaving her no viable choice but to drop out." *Id.* at 823, 830; see also *Brownlee v. Catholic Charities of the Archdiocese of Chicago,* 2017 WL 770997, at *5 (N.D. Ill. Feb. 28, 2017).

Courts in this district routinely apply *Carlson* to deny motions to dismiss constructive discharge claims so long as the plaintiff has "pointed to specific examples of her poor treatment" and "asserted that she decided to resign because these actions made continued employment intolerable." *Huber v. Fox Valley Park Dist.,* 2021 WL 1546425, at *3–4 (N.D. Ill. Apr. 20, 2021) (denying motion to dismiss constructive discharge claim where plaintiff alleged that "false disciplinary charges, an unjustified negative performance evaluation, and disparaging comments about her work" made continued employment intolerable); see also, e.g., *Smoler v. Bd. of Ed. for W. Northfield Sch. Dist. #31,* 524 F. Supp. 3d 794, 808–809 (N.D. Ill. 2021) (plaintiff adequately pled constructive discharge by alleging that her employer made damaging false statements about her, altered her performance evaluation process, and took away her keys and network access); *Nadeem v. Viscosity Oil Co.,* 2021 WL 4318094, at *6–7 (N.D. Ill. Sept. 23, 2021) (plaintiff adequately pled constructive discharge by alleging that her employer required her to perform the work of her supervisor, overlooked her for promotion, and hid advancement opportunities from her); *Abudayyeh v. Envoy Air, Inc.,* 2020 WL 5819868, at *6 (N.D. Ill. Sept. 30, 2020) (denying

motion to dismiss constructive discharge claim where plaintiff alleged threats of retaliation resulting in a fear of termination and a sudden change in her work schedule).

In cases where constructive discharge claims have been dismissed at the pleadings stage, the plaintiffs' allegations of mistreatment were too general, too isolated and infrequent, or suggestive of mere inconvenience rather than a potentially abusive work environment. See, e.g., *Gilhooly v. UBS Securities, LLC,* 772 F. Supp. 2d 914, 917–18 (N.D. Ill. 2011) (dismissing constructive discharge claim where plaintiff merely alleged "constant criticism and harassment" without referencing specific instances); *Parks v. Speedy Title & Appraisal Review Servs.,* 318 F. Supp. 3d 1053, 1065–66 (N.D. Ill. 2018) (holding that frequent technical issues, excessive supervisor discipline, and disagreement about job title and responsibilities were insufficient to support a constructive discharge claim); *Duminie v. NE Ill. Regional Commuter RR Corp.,* 2020 WL 1288876, at *6–8 (N.D. Ill. Mar 18, 2020) (claims of excessive criticism, being held to an unfair standard, and isolated instances of harassment were not sufficient even to plead a hostile work environment claim, which is subject to a lower bar than a constructive discharge claim).

Plaintiff's allegations of constructive discharge are sufficient to survive Defendant's motion to dismiss. Plaintiff has identified specific examples of his poor treatment, including his demotion—accompanied by lower pay, fewer benefits, a less desirable schedule, and loss of his service dog—and his claim that "he was subject to discharge for just one infraction" because the discipline he improperly received after the positive drug test remained on his record. [1 at 5; 22 at 4.] He also alleges that this treatment was so pervasive and severe that he had to resign. [*Id.* at 7.] Furthermore, Plaintiff pleads a plausible link between the examples of poor treatment resulting in his resignation and an unlawful motivation. His theory is that he was disciplined and demoted for receiving a false positive on his drug test despite Defendant knowing about his disabilities and

7

the medications he was prescribed to treat them. [1 at 3.] Under *Carlson*, these allegations are sufficient to survive Defendant's motion to dismiss.

As Plaintiff points out, Defendant relies almost exclusively on constructive discharge cases that were decided at summary judgment. [22 at 3.] As discussed above, however, the Court must not judge Plaintiff's claims at this stage against the high "intolerability" standard for constructive discharge at summary judgment, but rather the much lower standard of *Carlson* and subsequent cases. See *Smoler*, 524 F. Supp. 3d at 808-809. The complaint satisfies this standard. Defendant's motion to dismiss [13] is therefore denied.

### IV. Conclusion

For these reasons, the Court denies Defendant's motion to dismiss Plaintiff's constructive discharge claim [13]. The Court requests that counsel file a joint status report on the progress of discovery and any settlement efforts or request for a referral to the Magistrate Judge for a settlement conference no later than September 2, 2022.

Dated: August 4, 2022

_____
Robert M. Dow, Jr.
United States District Judge